Morning everyone, please be seated. First case today is Miller v. MacMurray College. That's case number 4100988 for the appellant Dwayne Young, for the appellee Barbara Fritsch and Ryan Byers. Are you going to be spending your time? Very well, you may proceed. Thank you, Your Honor. Good morning. May it please the court. The plaintiffs and appellants in this case are three students who were matriculated at MacMurray College in a sign language interpreter course wherein they sought a degree whereby they would become proficient in, certified as, and licensed as sign language interpreters so that they could earn a living. As part of that enrollment and matriculation, they were also enrolled in a 300-hour practicum wherein and whereby they were to gain experience as sign language interpreters in a variety of settings under the supervision of the college as expressed in the course description and the course catalogs. The practicum never happened. The students were left on their own, and you'll find nothing in the literature that says that the students were to be left on their own to go out and find their own practical experience. In fact, it's clear that they said the Office of Career Services would work with the faculty advisor to locate and supervise such opportunities in the field. Now, the matter before the court is a pleadings case. For two years in the trial court, we sought to bring the defendant to bar to account for the failure to deliver on the goods that it had promised the students when they matriculated in the practicum case, and now it's almost three years since we're here in the appellate court. In each case, the 300-hour practicum was involved, and in Mary Miller's case, there was a separate course in which there was to be a Monday, Wednesday, Friday class, and the instructor immediately canceled all Wednesdays and Friday classes and was occasionally there on Mondays to give some sort of instruction. But at every stage during the pleadings, in two years of attempting to bring the plaintiff or the defendant to bar, the plaintiffs were met with basically the claim that we were pleading nothing more than educational malpractice. Doesn't your ad damn them, prove them correct? I don't think so, Your Honor. Isn't that what the trial court concluded after two years of this, hearing this case? The trial court did, but I submit that the trial court was in error. I think that's why we're here, Your Honor. So the kinds of pleadings that we pleaded, we ended up reiterating in the prayer for relief when the court, so to speak, at the August 2010 hearing said, well, the contract prayers for relief had to be made specific. So we specified in the prayer for relief the various elements of damage we had claimed in the complaint itself. Now, the court gave no other specification. And as I submit, that's the most baffling part of this whole case is where the trial court came from because he had just... Didn't you specify damages that can't be awarded under a contract theory? Well, it may have. You know, I don't know. I mean, those weren't challenged directly. But in each instance, what we specified was what they had to go out and pay to acquire the experience and the practice that they would have gotten had the practicum been done. What's more obvious about a breach of contract place? If I hire someone to build an addition on my house and pay them $50,000 and they don't build the addition, what are my damages? Well, if you had to go pay $100,000 for someone else to do the same work, then I think you'd have $50,000 worth of damages in that instance. So I don't just get my $50,000 back? Well, if you paid the $50,000... As I said, I give them $50,000 to build the addition on my house and they don't. What are my damages? No, I think if you had to go out and acquire someone else to do the same work for $100,000, you'd have $100,000 worth of damages. Clearly, because that's the contract. Even the defendant admits that they were, under any circumstances, should have been entitled to their tuition back. They paid $8,000 in tuition in each case for absolutely nothing. And even that part, the trial court ended up dismissing. So each of these plaintiffs claimed that they had to go out and acquire, at great cost and expense, that which they had already contracted for and were to be given by the college under the contract that had entered into with the college for the practicum that they had already been enrolled in before. If I go to law school and then I fail the bar exam, do I have a complaint against the law school for breach of contract? No. What's the difference between that and this case? I would think that if the law school gave you a degree without ever giving you an instruction, you may have a claim for breach of contract or consumer fraud. In this case, these are language courses. What's more important than practice? In the whole practicum, the idea was to get that repeated experience so you learn the sign language that you're going to have to go out and interpret with. To do the work of an interpreter for the hearing impaired. Are you alleging a breach of a written contract or an oral contract or some mix of the two? Well, it's actually some mix of the two because the cases are fairly clear that the relationship between a student and the educational institution is one of contract. And that the course descriptions and the catalogs and all of those things become part of that contractual relationship. We've cited a number of cases that say that. So, it is a mix. There is, to the extent that there is a written description of the practicum and the payment of the tuition, that could be interpreted as a specific contract for that specific course. But I think the cases are fairly clear that the basic relationship between a student and the educational institution is one of contract. A contractual relationship. And then they go on to express the fact that the college's brochures and catalogs and course descriptions and all that become part of the contract between the student and the educational institution. In any event, we tried very carefully not to plead some sort of educational malpractice. We didn't say that there was an offer of instruction that was subpar. We said that there was a contract for specific instruction and supervision under the practicum and that they failed to deliver anything under that. And under that situation, it's pure contract law we submit. In addition to the fact that our Supreme Court has held in the Scott case against the Home Birth Association that educational institutions are in fact engaged in commerce and that the Consumer Fraud and Deceptive Business Practices Act does have specific application to educational institutions and they may be sued for statutory fraud for their deception and the wrongs committed under the Statutory Fraud Act. The plaintiffs here were not mere applicants for the position. They were matriculated students. In fact, they all graduated from the school. But it was on the college level. All of it was based on promises, assurances, and commitments in exchange for their tuition that they would gain not only the other instruction incidental to this, but they would gain the instruction, the practical application in various settings, which was promised to them, for which they got nothing and for which they had to go out and contract and make other kinds of arrangements at great expense in order to supplant what they had lost under their agreement with the school. This test that they failed, they were not certified? Why were they not certified? They all took licensing exams and they were delayed or, I think in one instance, I'm not sure that even at the time of the pleading she was able to get certified. But, you know, it's clear that all of them intended to make a living being sign language interpreters and there's a license and certification that is required. But the certification wasn't refused because they hadn't taken a particular test, was it? Or taken a particular course? No, they just hadn't gained the proficiency that they... It was like the bar exam. Well, I suppose. I mean, I see a lot of distinctions because, you know, when we're talking about a language, it just takes a lot of practice and practice and practice to learn a new language. And that was really the proficiency that's necessary in order for them to sit down in the various settings, maybe a court setting. And the court, you know, if they were called into court to interpret for a deaf person, the court, I think, would want a certain level of confidence that what they were getting was an accurate interpretation of what's going on. So I think there is a distinction there. Whereas, you know, in the bar exam, I think it's more, you know, analysis and that sort of thing as opposed to being able to communicate directly into another language. Well, no, if you haven't reached a certain level. If you haven't reached the appropriate level. Yeah, I mean, there is a level of proficiency that is involved in order to be able to accurately communicate what is being spoken in sign language in order to express that in plain English or vice versa. Now, the college's response on the practicum is, we never agreed to provide you with 300 hours of practicum. You had to do that yourself? They suggested that at one time, but the literature is completely contrary to that. The practicum very expressly says that it's to be done under the supervision of faculty and staff, that they're going to be provided instances and settings under a variety of different experiences that was going to be made available to them. And that's not what happened. There is some suggestion in the record that they were told at one time, hey, go get your own experience, you know, help yourself. If you can go find somebody who will let you just maybe shadow them or whatever. So, I mean, why did they have to pay tuition to do that? That's part of the breach of contract. Is there some documentation that sets forth that the college has agreed to provide three hours of instruction per week during the fall 2005 semester? In the course description of the one course that Mary Miller enrolled in, there was a specific, there was some reference that it was a Monday, Wednesday, Friday course, and the instructor immediately canceled all Wednesdays and Friday courses and said, hey, I'll meet you, you know, on the Monday courses. What documentation did you attach to your complaint? I thought we recited the whole course description. So you didn't attach it to your complaint? Well, I think we recited it at length in the complaint itself, what was done in Mary Miller's instance in her complaint. That's one element that distinguishes her case from the other two. The other two had no complaints about the other courses that they had been engaged in or involved in. Why wouldn't you attach it to your complaint? Aren't you required by statute to do that? Well, not if you recite it at length. Under, I think it's rule, Section 5-606, it says you either attach it or recite so much of it as relevant in the complaint itself. So I don't think it would be, under that instance, I think it would be duplicative to attach it. How long was it? It was a paragraph under course description, maybe three or four sentences. That had to do with ethics and preparing resumes and marketing your skills and those kinds of things. There's really two focuses here. One of them is whether or not the court erred in dismissing the statutory fraud counts. And it's not entirely clear whether the court did so because it thought that an educational institution is somehow exempt from that. The court disclaimed that in a hearing held pursuant to a motion that we filed on May 20th of last year, a motion to reconsider and clarify, the court had ruled, denied the motion to reconsider the dismissal of the statutory fraud counts. And at a previous hearing, I had specifically embraced the court on whether or not the court was holding that as a matter of law, the educational institution such as the defendant had a safe harbor and they were exempt from the application of the statutory fraud count. And the court then, at the hearing, and I recited it, and I invite the court's attention to pages 1019 to 1021 of the record, where I specifically recited the colloquy I had with Judge Mitchell where he said, I didn't intend to go that far, meaning I didn't intend to hold that the educational institution could never be sued for statutory fraud. And I responded and said, I'm trying to make sure that I understand because the dismissal of those accounts seemingly said that no cause of action can be pleaded. And the court said, no, I find while the action could be filed, that the allegations made and the plaintiff were not sufficiently pled as such an action. The problem I have with that is that there was only one effort made to plead the statutory count and the court had dismissed that. And he didn't say why he had dismissed it, and I was trying to ascertain whether or not he was holding as a matter of law they couldn't or whether the pleading was just insufficient. And if it was insufficient, my suggestion was that under the law offices of William Stogsdale case and other cases that the court abused its discretion because it gave no opportunity to amend at any time. And in Patty Hale's case, the court even denied her even trying to file the statutory count against the defendant. So we submit there that the court was, first of all, if the court was holding that the defendant couldn't be sued for statutory fraud, that was erroneous under the Scott case that we pleaded our Supreme Court held otherwise. If the court was in fact, as the court expressed at the hearing as it appears on page 1020, that the pleading was inadequate, that the court abused its discretion and not allowing at least one opportunity to amend the complaint to satisfy the pleading requirements of statutory fraud in that case. Well, you're the same lawyer and you had this case for two years earlier and you didn't change the complaint then regarding the act. Why should the court think that you need additional time and anything's going to happen with regard to the late, subscribed plaintiff? Well, I wasn't really the attorney for a part period of time early on in this case. Mr. Lahr was and he had withdrawn. But nonetheless, what I did when I did get involved was recognize that the court, the case was still pending, that the court had not expressly said why the statutory counts were dismissed. And I wanted to make sure that if we had to go on appeal at some point in time that I was not derelict in my duties to my client and to press the court on whether or not the court was holding that as a matter of law, the statutory counts could not be filed or the pleadings were defective. And the court basically indicated, well, they thought the pleadings were inadequate, but then disallowed any effort to amend those complaints. And in Patty Hale's instance said, you can't even file your first trot if you lock the door to the courthouse from the inside, as to Patty Hale. I want to turn for a moment to the breach of contracts provisions. As I indicated before, the defendant even acknowledged that, you know, certainly if there's a payment of tuition and a complete failure to deliver, you know, any sort of educational services, that the plaintiff at a minimum would be entitled to their tuition back. So, you know, beyond that, we're just arguing about what is an appropriate element of damage for contract. In the complaints, we had pleaded very specific things. Those weren't attacked specifically. It just came up kind of sui sponte at that August hearing. The judge on the defendants, after being told twice they had to answer the contract counts, they again asked for another motion to reconsider. And it was at that hearing where the court said, well, I'm going to order them to answer, but you need to amend your ad-demnum clauses because you have to be specific in a contract instance. So we reiterated in the prayer for relief, believing that's what the court was insisting on because we had laid out the elements in the complaint itself. The court had dismissed those, and he was ordering them to be answered. So we specified in the prayer for relief those specific elements of damage that we claimed in the complaint. Then it was completely baffling at the November hearing where the court said, you know, without any direction to us, to the contrary, basically threw up his hands and acted like we had done something contrary to his direction, and I still don't know what that could possibly be because we did make the prayers for relief very specific based on the various elements of damage that we had pleaded in the complaint. So he basically did deny the motion to dismiss, ordered them to answer, and then he didn't like your ad-demnum. And that's when he granted the motion to dismiss. He granted 14 days to amend the ad-demnum, which we did, and we specified. We reiterated in the prayer for relief the elements of damage that we had pleaded that he had ordered to be answered. Then at another motion to reconsider when there was still no answer, the defendant continued to just come in and say, look, this is nothing but educational malpractice. It was at that November hearing, and I'm at complete loss to explain why the judge acted angry like we hadn't done what he's supposed to do because there was nothing, no direction given other than on a contract case you've got to be more specific in your prayer for relief, and we reiterated every element of damage. I see my time is up, so I appreciate asking the court to reverse this situation and return it to the trial court. Thank you, counsel. You'll have rebuttal. Thank you. Justices, this case has, is- Keep your voice up a little bit. Okay, this case is, has, and always will be an educational malpractice case. Can you ever sue a college for a breach of contract? Sure you can. Sure you can, because Ross says you can, and I believe that the cases under Ross have said you could. Was there a contract here? No, absolutely not. There was no contract? No, absolutely not. The course descriptors do not, in a college catalog and in a brochure- There's no contract between the plaintiffs and the defendants in this case? In this case, the only thing that could be a contract, in my mind, would be- If you signed up to go to a sign interpreter college, that's not a contract? It's a contract only in terms of getting what you were promised, and in this case- So there is a contract? Well, there may be. What you're saying is that the contract was not breached? I'm saying that in this case, they haven't alleged a breach of contract. That's exactly what I'm saying, because- Counsel, that's not the question you were asked. You were asked, was there a contract? The answer clearly appears to be, there's a contract, but it wasn't breached. There can be a contract. Was there a contract in this case? As pleaded, no. Well, how about, was there a contract not as pleaded? I guess it depends on what they may allege the contract to be. So we don't know whether a student signs up at McMurray College or any college and pays $5,000 for a course, they just have bought air? Let me give an example. For example, if you are told that you pay your tuition and you get 130 hours, and then you will get a degree, your contract is that if you successfully complete 130 hours, you ought to get a baccalaureate degree. And all other things, if you claim, for example, there was one case that the college did not award a degree- So I have a contract for 130 hours if I pay my money? And if you take and successfully pass the courses, you would get a baccalaureate degree. And if they don't give you a baccalaureate degree when you successfully complete the 130 credit hours and earn those hours, then you could sue them for breach of contract. That's correct. And the Ross case says that not every catalog description and brochure represents a contract. Not everyone represents a promise that can be fulfilled by a breach of contract action. Why wasn't there a contract in this case? Because it is a course description that they allege was breached. And in order to decide whether the goods were delivered as promised, the court would have to sit and look at what happened, what went on in that course. What were each hour that was logged in the practicum? Did it meet the course descriptor? Was it something that you could quantify or qualify? Did the student put in as much effort as they should have? Well, you heard Mr. Young's argument. He says there was supposed to be, I think, a practicum offered. Yes. And it wasn't. Well, that's disingenuous, Your Honor, because he has alleged right from the beginning that it was offered, but it was ineffective to him. Because the course instructor was not interested, he claims. The plaintiffs claim that they didn't have to put in as many practical hours as initially they were told they'd have to put in. There was a practicum offered. They just didn't feel it was effective. Well, I thought, if I understood Mr. Young's argument, it was a practicum that didn't include the instructor's presence. Maybe I didn't understand him correctly, but I thought that's what he was arguing. This is not an area I'm familiar with, but it seems to me that wouldn't that require the instructor's presence? But that's really not what he's pled. What has been pled from the very beginning is that it was an unqualified instructor who was uninterested when she was approached. The video equipment was broken or missing, and some classes were canceled. Which means, obviously, that there were classes that were offered, but the instructor, in their way of thinking, was not as interested as they thought she should be in a course that they found to be, or they thought would offer them more. How many of us haven't been to courses that we thought we were going to get more? They were uninteresting, boring, whatever they may be. What could have he alleged in this case that would have been sufficient to constitute a breach of contract? Well, like the Ross case, if these students were promised, for example, a tutor, and they got no tutor, that would be a breach of contract. These students paid $8,300 to $8,500 apiece, so they expected something in return. Correct. What was the college supposed to give them in return for their money? Well, they obviously say they did the work, they got the grade, and they passed the course. Now, they claim it was ineffective. What was the college to provide for the $8,500 or $8,300 paid to the college in tuition? The practicum, the 15-hour practicum, the credits, which they got. They got a 15-hour practicum. They were given credit for that, and they claim it was deficient, and it resulted in, and they claim all these damages that flow from it. So they got what they bargained for. They got the 15 hours credit. How many other students were enrolled in these classes or this class other than plaintiffs? Probably 20. I mean, I don't know exactly because they're not part of this. Does the record reflect of those other 17 then, how they did on testing and actually pursuing their profession then? I mean, I happen to know they did. But is it in the record? No. Okay. It's probably left better unsaid then. I have a question about the statutory fraud counts. Counsel has argued that the court apparently said that he wasn't ruling you can never plead this cause of action. That's true. And yet there was no allowance for them to amend. Is that a problem? I don't think it is, Your Honor. First of all, we addressed a lot of that in our brief, starting with page 44, that there certainly may be, it may not apply to educational institutions. Of course, we did not argue that in the lower court. The ruling may not be erroneous even if the court did decide that in these types of cases there has been no such cause of action allowed. But in this situation, in this situation, under the facts, I think the judge ruled clearly that under these set of facts, consumer fraud does not lie because they haven't pled a cause of action for consumer fraud. The facts don't warrant consumer fraud. But Justice Turner's question is, let's assume you're correct, why shouldn't they be given an opportunity to plead over and see if they can? I think they actually did a couple of times, Your Honor. They did. The initial plaintiffs. And all the arguments were made. I mean, as you know, the briefs, there's over a thousand pages of briefs. It's not as if the plaintiffs should be baffled in this case as to what the argument of the defense is. We outlined in detail every argument that we had with regard to the consumer fraud allegations. And if they wanted to fit within what they believed a consumer fraud could be, they should not be baffled by that at all. They should have at least given the judge some language that the judge could have said this is not educational malpractice. Time and time again, the damages matched educational malpractice. The pleadings matched. Were any valid damage allegations? No, Your Honor. Getting the tuition back, isn't that valid? Well, if for that course, if there was an if they pled that they did not receive what they believed they were promised. Again, I don't believe they were promised 300 hours of practical experience. They claimed they were promised that. Isn't that a matter of evidence? Well, it's got to at least be pled. They just claimed there was this vague promise of 300 hours without attaching anything that promised them 300 hours. I could tell you I'm promising. You don't have to plead evidence. Why do they have to pledge it? Well, you at least have to plead that there is some basis in a contract, in a writing, in an oral. Where did they get 300 hours? The only way they get it is the syllabus, which says that my grading scale will be based on you logging in 300 practical hours. The first thing you told me was there was no contract here. Now are you saying there's a written contract? No. I'm not at all. If, in fact, they would claim, and I'm trying to think of how they could claim a contract, if they were to claim that they got 300 hours in the practicum and under the syllabus, that meant they got an A. So they contracted. I mean, that's what this is all about, a syllabus that said if you get up to 300 hours. I don't see why there has to be something in writing. If I sign up to go to school, to go to the University of Illinois Law School, and I get there and the teacher speaks Chinese, don't I have a cause of action if he doesn't speak English? And you're getting no education? Right. Sure. Right. That may be true. In this case, if Mr. Young, at trial, brings in a witness, an expert who testifies that your courses are inadequate, can't there be a recovery? That's educational malpractice, Your Honor. That's educational malpractice. And I know he complains that you're using that phrase over and over again. It is. When his clients signed up to go to this school, wasn't there a promise being made from the school that they were going to give a certain level of education? I don't think that's true, Your Honor. I don't think that's the contract. It's like your example of the bar review course. It's like your example of going to law school. You go to law school with the ultimate end of passing the bar exam and getting a job as a licensed attorney. All of us do that. Some of us never make it because we don't pass that certification test and we don't get a license to practice law. Is that the fault of the college? Is that the fault of Barbary, who gave us the course afterwards? Do we get to sue our law school because we had inadequate training? As a matter of fact, some litigation is now being brought on just that basis. I think we're out of some such cases. I don't know how successful they've been. I'm not aware of any successful ones, Your Honor. As a matter of fact, the case that was cited by the plaintiffs in this case as being successful in Minnesota was reversed. And you may be aware of that. The Glorvichen case versus Siris, that case does say, and it was reversed by the appellate court, it's now before the Minnesota Supreme Court, that said essentially that was educational malpractice too and we're not going to allow it because they claim that an element of the course that they claim was promised to them in the handbook that described what the course was about was never provided to them. And when that part of the course was never provided, it resulted in the death of the pilot. And therefore, the damages that flowed from that, what they claim to be breach of contract, fraud, misrepresentation. Let me ask you this. Suppose McMurray decided we're losing money. We are not making enough money out of the way we're running this operation. Let's fire a bunch of our teachers and hire some new people who maybe don't have that much in the way of skill. And then people start failing this interpreter test. Is there a cause of action for that if you've provided inadequate teachers? I'm not aware at this point, Your Honor, that there would be that, such a cause of action. That would be negligence and that would be educational malpractice. Perhaps. I mean, you have to judge.  They could bring some guy in off the street and put him in the classroom as my teacher. And I have no gripe about that. I'm sure you have a gripe, Your Honor. I mean, you don't either take the course, you don't go to that school, you check out the credentials. So that's the remedy here. If they didn't like the instruction they were getting, they should have quit. Well, or they should have complained. They should have whatever it may be. We all have bad teachers. And we all complain about what that teacher may be, whether it's boring. Does the record show at what point, if any, they could have dropped this class and gotten their refund? I don't know that that was an issue, Your Honor. I'm sure that, yes, you can do that. Absolutely. That happens at McMurray. You can, I mean, in any school, at a certain point, you can drop a class and ask for a refund and go on and do it another time. What about this as a thought? It seems to me that viewing Mr. Young's argument, it's like saying, I was promised, and let's see if I put it in this right, I was promised that I was going to have a continuum of X number of hours under the supervision of an experienced instructor. And instead of getting X number of hours, they gave me Y hours. And let's say Course Description Catalog, some kind of written documentation describing this course, promised X hours, and instead of that I got Y hours, Y being less. I was promised 300 hours, and I got 200. And I wouldn't have taken the course, or I expected 300, or I needed 300, whatever, and they didn't deliver what they promised. Would that be a breach of contract? I think that's exactly what the trial court said. It would be a breach of contract. We don't have that here. What is lacking in this case from that example? The specific promise or what? I know they got 300 hours. I mean, I know they logged in. That's why they've never pled it, because. Well, that's what I'm asking. They've never pled it. If we're hearing a plea in context, is it that they failed to plead that we were promised 300 hours and got only two? They can't do that, yes. But I suppose if they could, and they could point to the document that said, 300 hours I was promised, and I only got 200. The damages that flow from that are 100 hours. A portion of my tuition should be for that course. I want it all back, because I didn't get it. I was promised 300 hours. But they haven't pled? No. I was promised 300 hours and got something less than that promise. That's correct. They have not pled. And I think that's exactly what the trial court has said time and time again. Now, we talked about damages, by the way, and you heard my question to Mr. Young. Let's assume for the moment that they pled 300 hours and I only got 200, and there was a breach of contract. What are the damages available under that circumstance? Under that circumstance, Your Honor, it would be what would be the cost of the tuition for the 100 hours that they didn't get. Maybe a portion of the tuition. Well, how about if the court were to conclude that it's all or nothing, so you get your tuition back? Well, if that's the damages, that would be it. You heard Mr. Young. Apparently he's got some theory that you can get all kinds of other things as well for a breach of contract. Yeah, and I don't believe that, Your Honor. And we have argued that time and time again in our plea, in our responses, in our briefs, in the hundreds of pages. So it's your position that if there's a breach of contract, the most he gets is the tuition paid? From that course. Or a portion of the tuition. That's correct, Your Honor. Because to go further than that and decide that there was something that resulted from it, like the failure to pass the postgraduate certification test, is like the... And either hiring tutors or... Right, hiring the tutors, all those. You're going to have to prove that it came from those particular hours that you didn't get. There was some relationship, and that gets into the educational malpractice, which courts will not decide. I think I'm out of time. Thank you. Thank you, counsel. Counsel, rebuttals, please. Very briefly, Your Honor, two points. The first is we can't confuse the additional course that Mary Miller complained about with the practicum, because the practicum is common to all the cases. Mary Miller complained also of a different course where it was on ethics and preparing your resume and marketing your services. That's the one where the instructor immediately canceled all Wednesday and all Friday classes, said, come on in on Mondays. I'll answer any questions you have while I water my flowers in my office and those kinds of things. And that was peculiar to her. But with respect to the practicum, each of the plaintiffs, and the facts are as pleaded, they signed up for a practicum. The practicum did not happen. Now, there's constant suggestions that the students were required to keep some kind of a log of maybe some experience that maybe they tried to get on their own. But the practicum was very specific. It was to be done under the supervision of the faculty and the Office of Career Services to help them find and undertake experiences in a variety of settings under the supervision of people. And the pleading is, it did not happen. Now, to say because we... Ms. Critchie says you plead that it happened, but it was insufficient. I think that's what she says. Well, then... And your complaint says, contrary to its agreement, that the college failed to provide the 300-hour practicum, and that the college, A, failed to provide plaintiffs opportunities, B, failed to provide plaintiffs with opportunities to participate and supervise interpreting fieldwork, C, and D. So I think we pleaded that it just didn't happen. We pleaded all the things that were promised that did not happen. They didn't do these things. They didn't find these experiences for them. They didn't supervise them. And all this talk about broken machinery and things has only to do with Mary's separate claim. The practicum, and really what the college is really trying to do is say, hey, we had them try to get some sort of experience on their own and keep a log and turn that in, and we'll give you credit for that. On what basis, if there's a total breach here, are you ever entitled to recover anything more than the money paid for the course? Well, I thought typical contract damages, and we cited a number in our brief, are whatever the damages that are consequent to that breach. And if they were to get 300 hours and they had to go out and spend $100,000 to get $300 of experience that they should have gotten for the $8,000 that the college contracted for, it seems to me they're entitled to recover the $100,000. That's a breach of contract claim? Yes. Not just you didn't deliver on the contract, give me back the money I spent? The consequence of the breach has to be taken into account. And it's whatever flows, it's whatever damages flow from the breach of the contract. Like you mentioned on the house, if you paid somebody $50,000 to build an addition on your house, and I just refused to do it, and you had to go out and hire someone else for $100,000, it seems to me that you have $100,000 worth of damages. You're $50,000 back and the additional $100,000 under the bargain that you struck under the breach of contract. Yes. If one goes to the University of Illinois College of Law and graduates, why should you have to pay $1,000 for a bribery course? I want to be licensed as a lawyer. Hey, I just spent all this money at the College of Law. They're supposed to have trained me. You don't have to, is my recollection. That was an election you do just to try to make sure that you're tip-top for purposes of the bar exam. And some didn't. You're not required to take any kind of a bar review exam, but it's probably prudent to do that. It might be prudent in this situation. Well, if I didn't take it and I flunked, would I have a cause of action against the College of Law? No. Why not? I did everything they told me to do. I didn't pass the exam. They're supposed to have trained me. Why should I have to spend another $1,000 for this silly course? If you're adding to that that the college said you really better take this bar review course and pay $1,000 for it or your degree may not be any good, I think you may have a cause of action against the college. But my recollection is that's not true. They don't say that. But if you're asked, they'll say that's what a lot of people do. You might be wise to do it. Well, I mean, I think some of the instructors had an orange wallet. So you mean I got three years' worth of, I think it's now $33,000 a year tuition, and that's not enough to take the bar exam? Why is there a cause of action they didn't prepare me for? I showed up. I graduated. I got my degree. What's going on?  What was necessary in this case was true practice in learning a new language. Practice, practice, practice. That's what was promised under their supervision so they would become proficient, and that's what they were doing. Thank you, counsel. Thanks to both of you. The case is submitted, and the court stands in recess.